**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CHARLES JESSE CREGAR, JR.

        Plaintiff,

vs.                                                            Case No.  3:07-cv-1008-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## **OPINION AND ORDER**[1]

### **I.  Status**

    Charles Jesse Cregar, Jr. ("Plaintiff") is appealing the Social Security Administrator's denial of his claim for disability insurance benefits.  His alleged inability to work is based on the following impairments: post traumatic stress disorder; a "crushed disc" in his cervical spine; lung cancer; and arthritis.  Transcript of Administrative Proceedings ("Tr.") at 30. Plaintiff was found not disabled by Administrative Law Judge ("ALJ") Robert Droker, in a Decision entered on April 27, 2007.  Id. at 16, 25.  Plaintiff has exhausted the available administrative remedies and the case is properly before the Court.

    Plaintiff, who represented himself at his hearings[2] before the ALJ, argues the ALJ erred by failing to elicit testimony from Plaintiff and his wife regarding his daily living activities

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 14).

[2]      Plaintiff appeared twice before the ALJ: the first hearing was continued due to a lack of medical documentation in the record; and the second hearing was the one at which evidence was introduced.

prior to December 31, 1992 (the date last insured). Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem.") at 6-10. Defendant responds that Plaintiff has failed to meet his burden of proving that he was disabled as of the date last insured, and even if he could prove he was disabled as of the date last insured, he cannot demonstrate that he remained continuously disabled to within twelve months before his application date. Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Deft's. Mem.") at 1-6. Defendant contends that, although the ALJ failed to elicit testimony from Plaintiff regarding Plaintiff's daily living activities prior to the date last insured, "the lack of objective medical evidence repudiate[s] his claim of disability during the period." Id. at 7. The undersigned finds that Plaintiff's waiver of his right to be represented during the hearings was invalid, and that the ALJ did not meet his duty to fully develop the record in light of Plaintiff's pro se status. Accordingly, the Commissioner's decision will be reversed and remanded.

## II.  Background

Plaintiff, who was born November 26, 1943, was sixty-three years old when his hearing was held before the ALJ on February 6, 2007. Tr. at 891, 897. His educational background includes a Bachelor of Arts degree, earned in 1967. Id. at 97, 740, 897-98. He also completed one year of graduate school. Id. at 740. In 1968, while attending graduate school, Plaintiff was drafted into the military. Id. Plaintiff served in Vietnam from April of 1969 to April of 1970. Id. at 741.

Plaintiff's  past relevant work includes working in the insurance industry (from 1965 to 1968), serving in the United States Army (from 1968 to 1970), working in the retail sales industry (in 1980), and working as a self-employed lawn service provider (from 1986 to

1990). Id. at 23, 93-94. Plaintiff indicates that he became unable to work in September of 1990 and began receiving hardship disability benefits from the Veteran's Administration at that time. Id. at 903-04. He regularly received those benefits until they were terminated sometime in 2002 or 2003. Id. at 93, 904.[3]

On July 29, 2004, Plaintiff filed his application for disability insurance benefits, alleging September 1, 1990 as his onset date of disability. Id. at 16. Plaintiff indicates that he was unaware of his eligibility to receive disability insurance benefits through the Social Security Administration while receiving hardship disability benefits from the Veteran's Administration. Id. at 98.

### A.    The Hearings

On June 15, 2006, the first hearing was held. See Tr. at 882-90. Plaintiff appeared and indicated that he wished to proceed without representation. Id. at 884. During the hearing, however, it became evident that the record did not include medical documentation for the years that particularly concerned the ALJ in deciding whether Plaintiff was eligible for disability insurance benefits (1984 through 1992). Id. at 886-90. Accordingly, the ALJ continued the hearing to give Plaintiff an opportunity to obtain the relevant medical records. Id.

On February 6, 2007, the second hearing was held. See id. at 891-926. When questioned regarding whether he wished to proceed without representation, Plaintiff responded in the affirmative. Id. at 893. Although Plaintiff had been unable to obtain the

---

[3]    At his hearing on February 6, 2007, Plaintiff testified that he received the benefits "until four or five years ago[.]" Tr. at 904.

requested medical documentation, the ALJ proceeded with the hearing. Plaintiff was the first to testify. <u>See</u> <u>id.</u> at 897-911. Plaintiff's testimony was followed by that of his wife, that of Dr. Nick Defilippis ("Dr. Defilippis"), a medical expert for the Social Security Administration, and that of Dr. Dee Dee Locascio ("Dr. Locascio"), a vocational expert. <u>See</u> <u>id.</u> at 907-25.

Plaintiff testified he was hospitalized by the Veteran's Administration in 1984 for about a year because he was suffering from post traumatic stress disorder. <u>Id.</u> at 899. Plaintiff also recalled receiving outpatient treatment and attending group meetings to cope with the disorder after his hospitalization. <u>Id.</u> Plaintiff indicated the meetings took place in Atlanta, Lake City, and Jacksonville. <u>Id.</u> at 899, 902. He thought the meetings and treatment were sponsored by the Veteran's Administration and "public health, mental health people." <u>Id.</u> at 899. Plaintiff also recalled receiving Thorazine for his "psychological problems" from the Veteran's Administration in Atlanta "in the '90's," but he could not recall the exact dates. <u>Id.</u> at 902. At one point, the ALJ informed Plaintiff there were no records on file from the Veteran's Administration in Atlanta or Jacksonville, to which Plaintiff responded, "You don't have any records of that?" <u>Id.</u> at 901-02. After an inquiry about the disability benefits that Plaintiff received from the Veteran's Administration, the ALJ called Plaintiff's wife to testify.

Plaintiff's wife, Mrs. Brenda Cregar ("Mrs. Cregar"), testified she and Plaintiff were married in 1990, and she recalled attending a Veteran's Administration treatment center with Plaintiff "from '88 to '90 and then after." <u>Id.</u> at 907. Mrs. Cregar remembered Plaintiff's treating physician during that time to be "Dr. Mann." <u>Id.</u> at 908. The ALJ informed Mrs. Cregar no such records were present in Plaintiff's file. She responded that she had several documents at home; however, she was not aware Plaintiff needed to bring the documents

to the hearing. Id. at 908-09. Plaintiff apparently told Mrs. Cregar the Social Security Administration would obtain the documents. Id. After being informed of the possibility of additional documentation, the ALJ indicated he would give Plaintiff the opportunity, after the hearing, to submit any documentation from the prior treatment. Id. at 909-910. Finally, the ALJ asked Mrs. Cregar, "Is there anything else about [Plaintiff's] situation that, prior to 1992, that you think I ought to know?" Id. at 910. Mrs. Cregar responded:

> Well, I just know that my husband - - well, he's shaking like a leaf right now - - I just know that my husband has been a very sick man since I - - oh, [INAUDIBLE], please - - has been a very sick man for a very long time and Vietnam did this to him and then since he had the operation, when they took the Agent Orange out of his back, it's got even worse but I know that he's been, he's gone through this since I met him. I've been - - my brothers are both Vietnam vets and I'm very fond of Vietnam vets and I know what my husband goes through every night of his life and he goes back there and his back, he can't do anything because of his back. When they took Agent Orange out of his lobe and I'm just, I don't know what to say to take up and do, to say the right thing, to say the right, magic words to make everything all right, to make everything, you now, to say the right thing for you.

Id. at 910. The ALJ reiterated that he was interested in "information regarding [Plaintiff's] mental or psychological status before 1992." Id. at 911. Mrs. Cregar did not provide any additional information, other than to advise the ALJ she has to warn Plaintiff if she approaches him, "because he jumps out of his skin otherwise." Id.

Dr. Defilippis testified that, based upon his review of the Veteran's Administration's hospitalization record from 1984, it appears other records from the Veteran's Administration are missing:

> Q    . . . The records from the VA, at that time, stopped though after a few months but they say the hospitalizations will continue so, clearly, there are missing records from that hospitalization - -
>
> A    Uh-huh.

Q        - - which would support the idea that there are probably other missing records in the treatment of the Claimant.

Id. at 913.  Based upon the information available to him, Dr. Defilippis opined, with respect to the Listing of Impairments used by the Social Security Administration for determining whether someone suffers from a disability, the "anxiety disorder listing is met."  Id. at 915. Dr. Defilippis also indicated Plaintiff met the "substance addiction disorder."  Id.  However, Dr. Defilippis was unable to assess whether Plaintiff met the "B" criteria of the Listing of Impairments as of 1992 because the record was lacking medical documentation from, or around, that year.  Id. at 918-19.  The ALJ then asked, "[I]f we were able to supplement this record with additional information, would it be possible for you - - it may be possible for you to give us some additional information, if I understand your testimony?"  Id. at 919.  Dr. Defilippis responded in the affirmative.  Id.

Next to testify was Dr. Locascio, who indicated Plaintiff had not performed any work in the past fifteen years.  Id. at 921.  After being presented with a hypothetical purporting to encompass all of Plaintiff's impairments during the relevant time period, Dr. Locascio testified Plaintiff would be able to perform the jobs of "Cashier II," "merchant patroller," "order clerk in the food and beverage industry," and "call-out operator[.]" Id. at 922-24.  Dr. Locascio indicated her testimony was consistent with the Dictionary of Occupational Titles ("DOT").  Id. at 924.

Shortly after Dr. Locascio testified, the ALJ reminded Plaintiff that he could submit additional documents for the ALJ to consider, so long as they were received within two weeks.  Id. at 925.  With that, the hearing was closed.

**B.    The ALJ's Decision**

Because Plaintiff's date last insured was December 31, 1992, the ALJ was particularly concerned with medical evidence between 1984 (the last year for which Plaintiff produced a medical record) and 1992. That evidence never made its way into the record before the ALJ issued the unfavorable decision. The ALJ found Plaintiff suffered from the following severe impairments through the date last insured: "anxiety, post traumatic stress disorder, disorders of the spine, and DA&A[.]" Tr. at 18. However, the ALJ found:

> [T]he claimant's mental impairments from September 1, 1990 (the claimant's alleged onset date) thru DLI (December 31, 1992) caused no restrictions in activities of daily living; no difficulties in maintaining social functioning; and mild to moderate difficulties in maintaining concentration, persistence, and pace (needed low stress work); and no episodes of decompensation.

Id. at 20. Relying on the testimony of Dr. Defilippis, the ALJ found Plaintiff "met the requirements of 12.06(A)(5) and possibly (1); however, there was no evidence to support functional limitations for (B) criteria." Id. at 20-21. The ALJ noted, "Objective medical evidence establishe[d] that the claimant had symptoms and limitations prior to December 31, 1992, his date last insured; however, they did not prevent him from working." Id. at 22. Thus, the ALJ found Plaintiff "was not disabled as defined in the Social Security Act from September 1, 1990, the alleged onset date, through December 31, 1992, the date last insured[.]" Id. at 24.

### III. Legal Standard

This Court reviews the Commissioner's final decision as to disability[4] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No special deference is accorded the application of legal principles; in turn, findings of fact "are conclusive if ... supported by 'substantial evidence[.]'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A reviewing court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The decision of the Commissioner will not be disturbed, so long as it is supported by substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

### IV. Discussion

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry described in the Code of Federal Regulations, determining as appropriate whether the Plaintiff: 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).

---

[4]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A).

Plaintiff, through recently-acquired counsel, focuses on the ALJ's failure to elicit testimony from Plaintiff and his wife regarding Plaintiff's daily living activities prior to 1992 in light of his pro se status at the hearing. Pl.'s Mem. at 6-10. Plaintiff contends the ALJ's failure to elicit testimony regarding his activities prior to 1992 constitutes reversible error because there was no other evidence available to aid the ALJ in determining whether Plaintiff was disabled during his period of eligibility for disability insurance benefits. See id. Further, Plaintiff comments on the lack of medical records available prior to 1992 and opines that he "should have the opportunity to present his case." Id. at 6, 9. Plaintiff requests for the case to be reversed and remanded for "further administrative proceedings. . . to determine [whether] Part B of [] Listing 12.06 has been satisfied." Id. at 10.

### A.     Plaintiff's Waiver of the Right to be Represented at the Hearings

The undersigned first examines the validity of Plaintiff's waiver of his right to be represented at the hearings. While Plaintiff does not explicitly raise waiver as an issue for this Court to review, the undersigned concludes that because Plaintiff argues the ALJ erred by failing to ask Plaintiff questions regarding his daily activities prior to 1992, Plaintiff necessarily asks the Court to determine whether the ALJ sufficiently developed the record as a whole. Implicit in the ALJ's duty to develop the record was the duty to ensure Plaintiff validly waived his right to be represented at the hearings.

A claimant has a statutory right to be represented at a hearing before an ALJ. See 42 U.S.C. § 406; see also Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982). The Commissioner "has a duty to notify a claimant of his or her right to counsel before the hearing." Smith, 677 F.2d at 828. Though the right to be represented may be waived by

a claimant, the waiver must be knowing and voluntary.  <u>See</u> <u>Brown v. Shalala</u>, 44 F.3d 931, 935 (11th Cir. 1995).

Prior to his hearing, a notice was sent to Plaintiff stating:

> <u>IF YOU WANT TO OBTAIN A PRIVATE ATTORNEY</u> to represent you but you have been unable to find one, a private attorney may be obtained by contacting one of the organizations shown below.  You will be referred to a private practicing lawyer who is familiar with representing claimants before the Social Security Administration.   <u>Some private attorneys may be willing to take your case under a fee agreement whereby no fee will be charged unless your claim is allowed.</u>  The attorney must first obtain approval from the Social Security Administration for any fee charged.

Tr. at 41 (emphasis in original).  This language was followed by a chart with headings labeled, "Organization," "Address," and "Telephone," but the chart was otherwise blank and did not include any organizations or attorneys.  <u>See</u> <u>id.</u>  Further, the notice named three organizations that might be willing to help Plaintiff or refer him to a private attorney.  <u>Id.</u>

At Plaintiff's first hearing on June 15, 2006, the following colloquy took place regarding Plaintiff's representation:

> ALJ:        This involves the application of Mr. Charles Cregar for disability benefits under the Social Security Act.  This hearing is being held after due notice this 15th day of June, the year 2006, here in Jacksonville, Florida.  I'm Judge Droker.  The Claimant is present and is unrepresented.  Mr. Cregar, in the Notice of Hearing that I sent to you, there was information in that Notice that you could be represented at this hearing by a lawyer or other representative and, since you're here today without a lawyer or other representative, am I correct in understanding that you wish to proceed without such representation?
>
> CLMT:        Correct.
>
> ALJ:        Let me just explain briefly about our proceedings.  They are informal in nature.  By that, I mean the strict rules of evidence that are followed in some Courts are not necessarily followed here, however, all of the testimony will be taken under oath.  My decision will be in writing and a copy, as always, sent to all parties.  It's my understanding you've had a chance to look at your file?

CLMT:      No, sir.

ALJ:       You haven't had a chance to look at your file?

CLMT:      No, sir.

ALJ:       Do you want some time to look at your file?

CLMT:      You think I need to?  I mean, I provided all the - -

ALJ:       I can't advise you.  See, that's why we tell people, you know - -

CLMT:      To get a lawyer.

ALJ:       - - maybe you want a representative.  I'm here to judge the case and I'll try to give you whatever information I can but I don't give people advice on how they should proceed with their case.

CLMT:      Okay.  Let's proceed.

ALJ:       Huh?

CLMT:      Let's proceed.

Id. at 884-85.  The ALJ then attempted to proceed with the hearing.  At one point, it became

evident that Plaintiff did not have the relevant medical records for the purpose of considering

whether Plaintiff was disabled as of the date last insured.   The ALJ determined a

continuance was appropriate and explained to Plaintiff he was particularly interested in

medical records before 1992, instructing Plaintiff to obtain them for his review.  Id. at 887-

890.

At the second hearing, held on February 6, 2007, the following colloquy took place

regarding Plaintiff's representation:

ALJ:       This is the application of Mr. Charles Cregar for disability benefits under the Social Security Act.  The hearing is being held, after due notice, this 6th day [of] February, the year 2006, here in Jacksonville, Florida.  I'm Judge Droker.  The Claimant is present and is unrepresented and, Mr. Cregar, in the

> Notice of Hearing that I sent to you, there was information that you could be represented at this hearing by a lawyer or other representative but you appear today without a lawyer or other representative. Am I correct in understanding that you wish to proceed without such representation?
>
> CLMT:      That's correct.
>
> ALJ:      Okay. [The ALJ then identified the witnesses he would be calling on to testify at the hearing].

Id. at 893. No other inquiry was made of Plaintiff's understanding of his right to representation.

In Brown, 44 F.3d at 932, the United States Court of Appeals for the Eleventh Circuit addressed a similar situation, ultimately finding that a claimant did not validly waive her right to be represented at her hearing before an Administrative Law Judge. In Brown, the claimant signed a waiver of her right to counsel prior to the hearing. Id. at 932. When the claimant arrived at the hearing, the ALJ inquired into the claimant's waiver, and it became evident that the claimant was confused about her right to representation. Id. at 933. Further, the claimant indicated she intended to be represented by her former supervisor, but the supervisor did not attend the hearing. Id. After being advised of these circumstances, the ALJ again advised the claimant of her right to be represented, and the claimant was still having issues understanding the process. Id. Eventually, after further explanation and questioning, the claimant agreed to go forward without a representative. Id.

Recognizing the claimant was "confused by the ALJ's questions concerning representation," the Eleventh Circuit reversed the district court's finding that the claimant knowingly and voluntarily waived her right to counsel. Id. at 935. In reversing the lower court, the Eleventh Circuit commented that "[n]othing in [the claimant's] testimony evinces

an understanding that she had other options which were either explored or rejected." Id. The Court recognized that a notice was sent to the claimant prior to the hearing which informed her that a private attorney might take her case on a contingency fee basis and listed the addresses and telephone numbers of local legal services programs. Id. at 935 n.6. However, the Court noted that the ALJ did not ask the claimant whether she sought help from or intended to contact any of these services, nor did the ALJ attempt to ascertain whether the claimant understood she could obtain representation through those services. Id.

Here, much like the situation faced by the Eleventh Circuit in Brown, the ALJ did not attempt to explore other options with Plaintiff regarding representation, nor did he elicit any responses from Plaintiff indicating Plaintiff truly understood he had options other than self-representation. Further, it appears Plaintiff was confused about the process, as he had not even reviewed his file prior to the first hearing. Given Plaintiff's confusion, the ALJ should have explored other options available to Plaintiff at his hearings to ensure that Plaintiff was both aware of these options, and willing to forego them. Although a notice was sent to Plaintiff prior to his hearing indicating he had the right to representation, a substantially similar notice was sent to the claimant in Brown and that Court found it was not sufficient to ensure that the waiver was knowing and voluntary. See id. at 935 n.6. The undersigned is convinced that Plaintiff did not knowingly and voluntarily waive his right to be represented at the hearing before the ALJ.

## B. Plaintiff's Right to a Full and Fair Hearing

Notwithstanding the determination that Plaintiff's waiver of representation was invalid, the undersigned must examine whether the ALJ met his duty to develop a full and fair record in light of Plaintiff being unrepresented. See Brown, 44 F.3d at 935; Smith, 677 F.2d at 829. "When an unrepresented claimant unfamiliar with administrative hearing procedures appears before an ALJ, the ALJ is under an obligation to develop a full and fair record; *i.e.* the record must disclose that there has been a full and fair hearing." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (emphasis in original). If there has been a valid waiver of the right to be represented, a claimant must show "clear prejudice or unfairness" caused by the lack of representation to prove that he was denied a full and fair hearing. Id. at 1540 n.2 (quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981)). Of particular importance is "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Brown, 44 F.3d at 935 (internal quotations omitted). Missing medical documentation or documentation of vocational services supporting a claim of disability can be prejudicial, especially when it relates to treatment occurring near or during the period in which the claimant is eligible for disability insurance benefits. See id.

Conversely, if a claimant has not validly waived his right to be represented, "the hearing examiner's obligation to develop a full and fair hearing rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by the lack of counsel."[5] Smith, 677 F.2d at 829 (citing Cowart v. Schweiker, 662 F.2d 731,

---

[5] The Eleventh Circuit has commented on the difference in the two standards as follows: "These two standards appear to differ only in degree. Both require that the ALJ fully develop the record. Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration. The only discernable
(continued...)

735 (11th Cir. 1981)).  In examining whether a claimant was prejudiced by the lack of counsel, a reviewing court must ensure the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts."  <u>Smith</u>, 677 F.2d at 829 (citing <u>Cowart</u>, 662 F.2d at 735).

Here, regardless of which standard is applied, it is apparent that the ALJ did not fulfill his duty to fully develop the record in light of Plaintiff's lack of representation at the hearing.  <u>See</u> <u>Brown</u>, 44 F.3d at 935 (determining that the claimant did not validly waive her right to counsel, but analyzing whether "the ALJ fulfilled his duty to develop the record" and whether the claimant "was prejudiced thereby," notwithstanding the determination).  The ALJ did not have any medical documentation before him pertaining to the period of disability, and he did not attempt to elicit any relevant testimony with respect to his ultimate findings.  Therefore, Plaintiff was prejudiced both by his lack of representation and by the ALJ's failure to fully develop the record.

As part of an ALJ's development of the record, it is essential for the ALJ to consider "[b]oth symptoms and signs which are part of any diagnosed mental disorder" when evaluating the severity of a mental impairment.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.00 ¶ B; <u>see also</u> 20 C.F.R. § 404.1508 (stating, "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms") (internal citation omitted).  The Code of Federal Regulations defines "symptoms" and "signs" as follows:

---

[5](...continued)
difference is that a more specific showing of prejudice is required if [a] claimant did not waive his right to counsel."  <u>Kelley</u>, 761 F.2d at 1540 n.2.

(a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.

(b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. § 404.1528. With regard to the anxiety related disorder from which Plaintiff

alleges he suffers, the Listing of Impairments provides, in part:

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:
    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
        a. Motor tension; or
        b. Autonomic hyperactivity; or
        c. Apprehensive expectation; or
        d. Vigilance and scanning; or
    2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
    3. Recurrent severe panic attacks manifested by sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; or
    4. Recurrent obsessions or compulsions which are a source of marked distress; or
    5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

> 4.  Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors); or
>
> C.  Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.06.  Dr. Defilippis testified that as of Plaintiff's date last insured, he met the criteria of Section 12.06(A)(5) and probably (A)(1).[6] See Tr. at 914.  However, due to the lack of medical documentation in the record, Dr. Defilippis could not render an opinion regarding whether the "B" criteria was met.  See id. at 918.  In finding Plaintiff was not disabled, the ALJ relied heavily on Dr. Defelippis' testimony that, given the absence of medical documentation in the record for the relevant time frame, he could not conclude the "B" criteria was met.  See id. at 21.  Plaintiff, focusing on the ALJ's findings in this regard, asks the Court to remand to determine whether the "B" criteria can be met.  See Pl.'s Mem. at 10.

Because Plaintiff's period of eligibility had ended, the only way for the ALJ to have evaluated Plaintiff's "signs" for the purpose of determining whether the "B" criteria had been met was to review medical documentation regarding prior treatment for Plaintiff's diagnosed mental impairment.  Additionally, Plaintiff's own description of his impairment should have been considered.  Though both "signs" and "symptoms" must be taken into account when reaching a decision regarding the severity of the impairment, the ALJ did not consider either in determining that the "B" criteria was not met.  A review of the record, including the transcript of the hearing before the ALJ, demonstrates that Plaintiff suffered "unfairness or

---

[6]     There was also some discussion about the effect that Plaintiff's prior substance addiction disorder had on the listing criteria.  See Tr. at 914-18.

-17-

'clear prejudice'"[7] by his lack of representation because of the evidentiary gaps in the record resulting therefrom, and that the ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts[.]"[8] Thus, Plaintiff was denied his right to a full and fair hearing.

### 1. Missing Medical Documentation

Plaintiff alleges September 1, 1990 as his onset date of disability. December 31, 1992 is the date Plaintiff was last insured for purposes of receiving disability insurance benefits. Thus, of particular importance is medical documentation near or during that twenty-eight month time span. However, there are no medical records in the record from 1984 through 1995.

While the 926-page Transcript of Administrative Proceedings is filled with documentation concerning Plaintiff's various medical issues from 1995 to the present, the the only evidence dated prior to Plaintiff's alleged onset date of disability and Plaintiff's date last insured is a narrative summary authored by G.R. Duffes, M.D. ("Dr. Duffes") on April 19, 1984. In the summary, Dr. Duffes indicated Plaintiff was hospitalized at a Veteran's Administration Hospital on January 10, 1984, and recommended continued hospitalization. Tr. at 738-743. Plaintiff was diagnosed with "R/O personality disorder vs. post traumatic stress disorder; right knee pain; [and] backache." Id. Dr. Duffes opined, "Veteran is considered competent for VA purposes and unemployable indefinitely." Id. at 738. The next medical documentation in the record is from 1995.

---

7        See Brown, 44 F.3d at 931 (citing Smith, 677 F.3d at 830).

8        See Smith, 677 F.3d at 829 (citing Cowart, 662 F.2d at 735).

At the first hearing, the ALJ granted Plaintiff a continuance with instructions to attempt to produce the relevant documentation. See id. at 887-890. It also appears at least some effort was made by the Social Security Administration to obtain the documentation. See id. at 903. However, despite the ALJ's instructions, Plaintiff apparently did not understand the importance of the medical documentation spanning from 1990 to 1992:

> Q     Besides going to meetings and taking the Thorazine, can you tell me anything about your treatment that you received at any time before 1992? Do you have any - - can you help me out on that?
>
> A     Well, I was going to the outpatient thing during that period of time, the outpatient clinic at downtown Jacksonville.
>
> Q     And we have no records from them indicating - -
>
> A     You don't have any records of that?
>
> Q     - - your attendance there so I'm trying to understand, you know, if you were receiving medical treatment during that period of time, why is it that we have no records?
>
> A     Don't have any records.
>
> Q     Well, I mean, we've solicited from the VA, the Veteran's Administration, all of their records and they have sent us extensive records but they don't cover the time period that you're describing to me and that's where I'm having a significant problem in trying to reach back, to understand what was going on prior to 1992. I have the one document that we did receive for treatment in 1984 but nothing between 1984 and 1992 so I have that as a separate issue and I don't see how, under the current situation, I can accurately, you know, can determine exactly what was going on at that point in time and, certainly, there's no way to determine that, for me, at least, in this record. One of the reasons why we continued the case was that I was looking for whatever else that would be available to us in the way of your health treatment for that period of time.
>
> A     Well, I thought that thing in '84 and it, you know, it was saying I was permanently disabled[.]

Id. at 902-03.  Plaintiff's wife's testimony confirms Plaintiff's confusion regarding obtaining the medical documentation.  Mrs. Cregar testified she was unaware that documentation was

-19-

needed and her husband told her the Social Security Administration would obtain the relevant documents. Id. at 909-910.

The ALJ suggests that, despite an attempt by the Social Security Administration to obtain medical documents from the relevant time period, the documents "have not been produced[,] nor are they available[.]" Id. at 22, 902-03. The ALJ does not explain what efforts were made to obtain this information on the part of the Social Security Administration.[9] It appears there are records of such treatment, as evidenced by Dr. Defelippis' testimony that records from the 1984 hospitalization were "clearly" missing, "which would support the idea that there are probably other missing records in the treatment of [Plaintiff]." Id. at 913. Further, Plaintiff's May 2, 2008 submission to this Court indicates, "we are in the process of getting [the] V.A. record[s] from Jacksonville[,] Lake City[,] and Augusta." See Doc. No. 16 (Response to Order to Show Cause). Thus, records of Plaintiff being treated during the relevant time period probably exist and are likely to emerge with a diligent search. Plaintiff was certainly prejudiced by the lack of records, which is confirmed by Dr. Defelippis' testimony that he would be able to provide "additional information" if the record was supplemented by the relevant medical documentation. See Tr. at 919.

Taking into account the corroborative evidence in the record, Plaintiff appears to be accurate in his recollection of being treated during the relevant time period. If he is accurate, counsel would have greatly assisted him in attempting to obtain, or obtaining, the

---

[9]    Defendant argues the burden to produce medical documentation to support a claim for disability rested with Plaintiff, relying on Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). See Deft.'s Mem. at 6-7. Ellison is distinguished from the instant case in two significant respects. First, the plaintiff in Ellison was represented at his hearing before the ALJ. See Ellison, 355 F.3d at 1274. Here, Plaintiff was not represented at his hearing; consequently, the ALJ's duty to create a full and fair record rose to one higher than that of the ALJ in Ellison. Second, in this case, the Social Security Administration apparently attempted to obtain the documentation, resulting in confusion regarding who was obligated to obtain the documents. See Tr. at 902-03.

documentation supporting his claim.  The undersigned recognizes the ALJ granted Plaintiff one continuance and additional time after his hearing to obtain relevant documents. However, given Plaintiff's own admission regarding poor memory during that time frame, <u>see id.</u> at 925, Plaintiff should have the opportunity, with counsel if he so desires, to fully present his case to the ALJ.  Appearing likely that there is documentation of Plaintiff's treatment during the relevant time period, Plaintiff was prejudiced by the lack of an opportunity to present it.  <u>See</u> <u>Brown</u>, 44 F.3d at 936 (recognizing there is "no way of knowing whether evidence missing from [the] case would sustain [the plaintiff's] contentions of her inability to work," but noting that "[i]n the absence of proof to the contrary. . . we must assume that it does and lend credence to [the plaintiff's] allegations").

## 2.  Failure to Elicit Testimony

Plaintiff was prejudiced by the absence of a "full and fair hearing" as contemplated by <u>Brown</u>[10] and <u>Smith</u>[11] because, in addition to the absence of medical documentation in the record, the ALJ failed to elicit relevant testimony.  There are two specific areas in which further inquiry was required: (1) Plaintiff's symptoms and limitations resulting from his impairments; and (2) testimony regarding the "B" criteria that the ALJ was required to consider in determining whether Plaintiff's mental disorder was of the level of severity required during the relevant period to receive disability insurance benefits.

First, although the ALJ found that "[o]bjective medical evidence establishes that the claimant had symptoms and limitations prior to December 31, 1992[,]" Tr. at 22, the ALJ

---

[10]     44 F.3d at 935.

[11]     677 F.2d at 829.

indicated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. Importantly, the ALJ did not attempt to elicit any responses from Plaintiff regarding the intensity, persistence, and limiting effects of the symptoms, nor did Plaintiff offer any information in that regard. Thus, before discounting Plaintiff's alleged testimony concerning his symptoms, the ALJ should have sufficiently developed the record on this subject by eliciting responses from Plaintiff about the severity of his symptoms.

Second, the ALJ was required to consider Plaintiff's daily activities, Plaintiff's level of social functioning, Plaintiff's deficiencies resulting from failure to complete tasks, and Plaintiff's episodes of deterioration in work settings (if any), when assessing the severity of Plaintiff's mental disorder. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.06(B)(1-4); see also 20 C.F.R. § 404.1529(c)(3)(I) (requiring the ALJ to consider daily activities). However, the ALJ did not elicit any responses from Plaintiff or his wife regarding these "B" criteria subjects occurring prior to 1992. Defendant argues that "even though the ALJ did not elicit additional testimony regarding Plaintiff's activities prior to December 31, 1992, the lack of objective medical evidence repudiated his claim of disability during the period." Deft.'s Mem. at 7. Defendant relies on the lack of objective medical evidence, essentially conceding that the ALJ did not inquire into a relevant topic for the purpose of determining whether Plaintiff was disabled. As discussed supra at 18-21, one of the ways Plaintiff was prejudiced by the lack of representation was the absence of medical documentation in the record. Further, the ALJ found Plaintiff suffered from several severe impairments during the relevant time period, but in light of the absence of medical documentation, was apparently

unable to assess whether those impairments prevented Plaintiff from working. Particularly relevant, then, would be Plaintiff's, and/or his wife's, testimony regarding those subjects, as well as any of the limitations listed in the "B" criteria.[12] Yet, the ALJ did not attempt to elicit this testimony. Thus, the ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts"[13] before issuing his unfavorable decision.

## V. Conclusion

Plaintiff's waiver of his right to be represented at his hearings was invalid. Therefore, the ALJ's duty to ensure that Plaintiff received a "full and fair hearing" rose to a special one. The ALJ did not meet his special duty in this case, and Plaintiff was prejudiced by the lack of counsel representing him. Even if Plaintiff's waiver were deemed valid, it is apparent that Plaintiff suffered "unfairness or 'clear prejudice'"[14] by his lack of representation because of the multitude of evidentiary gaps in the record. Plaintiff is entitled to a new hearing because of the evidentiary gaps in the record resulting from the missing medical documentation and the ALJ's failure to elicit testimony regarding the relevant facts used in his determination of whether Plaintiff is disabled according to the Social Security Act. In light of this determination, the undersigned need not decide whether the ALJ's decision was supported by substantial evidence. In accordance with the foregoing, it is hereby **ORDERED**:

---

[12] The undersigned recognizes that testimony regarding symptoms cannot be the sole criteria considered by the ALJ in assessing whether an impairment is established. See 20 C.F.R. § 404.1508. Regardless, the testimony would have been relevant in the consideration of whether the "B" criteria was met, especially in light of the absence of medical documentation.

[13] See Smith, 677 F.3d at 829 (citing Cowart, 662 F.2d at 735).

[14] See Brown, 44 F.3d at 931 (citing Smith, 677 F.3d at 830).

1.     The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter for further proceedings consistent with this Opinion. The Commissioner shall conduct these and any other proceedings deemed appropriate as expeditiously as possible.

2.     The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 13, 2009.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of record